Longboat Energy, LLC And Mr. Kotara, if you would like to approach the podium and begin, you may do so. May it please the court, it's my honor to be here. It's my first time in this court. I think the main issue in this appeal is that the district court's 12B6 dismissal was based entirely on the settlement agreement that the defendants attached to their motion to dismiss. My client partners is a stranger to that agreement. We never saw it before the motion to dismiss. It's unsworn. And I can't cross-examine a document. So we ask the court to reverse the dismissal and let this case proceed to discovery. Did you refer to that document in your complaint, though? That's one of my arguments I'm going to make, Judge Davis. I'll address it now if you would like me to. I just want to know if you referred to it in the complaint. We referred to a settlement agreement. The settlement agreement that we understood had been reached at mediation. We did not refer in our complaint, which was our state court petition, we did not refer to the settlement agreement that they attached. That settlement agreement has different terms than what we pleaded. And that's one of the points I'm going to get to. But the main thing I want to focus on today, the first issue, is that the district court erred in considering the settlement agreement that the defendants attached to their motion to dismiss and then crediting it over the plaintiff's factual allegations. Those errors— Did you file an objection to the court considering the settlement agreement? We did not file an objection, Your Honor. In our response to the motion to dismiss, we made what I contend is an objection. We argued—we summarized the defendants' factual allegations in their motion to dismiss, which were based on the settlement agreement. And we said in our response to the district court that those factual contentions are irrelevant in the context of a motion to dismiss. And two, we stated that the factual contentions that are relevant are the well-pleaded allegations in our complaint. And that's not a perfect objection to the settlement agreement, but it was enough to put the district court on notice and to bring it to its attention on whether it should consider the settlement agreement. So— Let me ask you just generally what your litigation that you helped to finance, what it was about. As I understand it, you and—or your client and Longboat had a common interest in a particular tract of land. Is that right? Yes, Your Honor. And so if Longboat won their lawsuit against CCD or whoever the other party was, then you would stand to benefit from that litigation? Yes, we would stand to benefit if they obtained the disputed acreage. And our agreement with Longboat also said if you get a monetary recovery, we're going to get paid back the attorney's fees that we paid to fund that litigation. Did your client pay or advance attorney's fees and costs in that litigation specifically, or was it more general underwriting of litigation expenses as a whole, in terms of the effort as a whole? It was paid specifically. Excuse me. I believe that the farm-out agreement that we attached to our state court petition says that we would be billed and we would pay monthly. And I believe we did, although at the end there were some—there was about $200,000 or so in unpaid fees. But the contract says that your contracting partner is going to go out and try to acquire title or acquire interests in fields that might be productive, so on and so forth. As litigation arose, did you advance—did your client advance fees and costs or pay fees and costs for specific pieces of litigation, or was, as you just mentioned, sort of a monthly contribution that we're going to have to resolve a lot of these claims based on litigation? So here's my share. The two things that are in the record that I can refer to are the farm-out agreement or the development agreement, which calls for us to pay for the litigation monthly. We were not parties to that litigation, and honestly, I don't—I've never seen anything in that litigation. But I think that we have pleaded that we paid at the time of the mediation and settlement, I believe we had paid over $400,000 to fund that litigation. And is that related to billing that is associated with this particular litigation? I'm talking about the underlying litigation. Or is it more generally that we are going to litigate claims on properties that are going to ultimately make us profitable? You understand that your argument is much more compelling if you say, look, we have a contract, and doggone it, this is a stubborn claim that we have here, and it's going to be stubbornly litigated. How about we go in on this one, you pay part of the legal fees, and at the end of the day, we'll successfully negotiate a resolution or try the case to a judgment and profit. That's my distinction is between you just generally contributing to a pot to pay litigation expenses or whether you went in and paid bills arising out of this particular underlying litigation. I believe that the record reflects that we paid for this specific underlying litigation. So there's a fee bill, and we need money, and your client wires or writes a check. Yes, Your Honor. Okay. I understood the main object of the litigation was to clear title to this tract of land that you had a common interest with along the way. Yes, Your Honor. And what was the basis for your expectation there might be some cash involved in the settlement? Because our farm out agreement provided for it. It said that if Longboat obtained a monetary recovery, we would be paid back. I understand that, but what gave rise to the expectation that there might be cash involved? Your Honor, I don't believe the record reflects that. Okay. But you did have some expectation of cash. Well, the expectation I can refer to is that the agreement says that. All right. I got that. Okay. Now, were you aware that Longboat's parent, Cottonwood, had interest in a separate piece of land in this same general area? Your Honor, I don't think the record, our petition, I don't think reflects that we were aware of that. Well, did you become aware of it? When did you become aware of it? I believe we came, I've got to stay within the record, Your Honor. I believe that we became aware of it around the time of the settlement. It's not in our petition, but I think the court can infer from it that in the context of the settlement, we somehow learned that the money was going to get diverted or paid to Cottonwood. Tell me, you alleged and you complained about the conversation you had with the lawyer. Tell me what that was, tell me what was said. Well, according to our petition, the lawyer said, we settled. There's going to be the first tranche. It's $350,000. You're going to get your 70 percent less what you already owe us, and that was in a phone call. We then got an email confirming that, and then we got the follow-up email saying, well, it was a misunderstanding. And I think the court can infer from that that Cottonwood was possibly mentioned, but the record doesn't reflect where. Who was the lawyer? Who did the lawyer represent who called you? Longboat.  Yes, Your Honor. Your understanding was after the mediation, I guess this was between Longboat and CCB. Is that your understanding? All the record reflects is that there was litigation between Longboat on one side and then CCB and Polaris on the other. There were no pleadings or anything in the record, and it was apparently over the disputed acreage, and we learned it was settled at mediation. We were told we were going to get money. We funded 70 percent of the litigation, and then at the last minute we were told, well, you're not getting any. Was there any explanation for why you weren't? It is not in the record, which is, of course, in a 12B6 situation we're limited to the pleadings, but there is nothing else in the record about why other than you're not going to get it. Our pleading states that Mr. Coltolini, partner's principal, tried to find out from the attorney, tried to find out from the principal of Longboat and Cottonwood. They wouldn't talk to him. That is in our pleading. Counsel, one of your assignments is that you were denied an opportunity to amend. What would you propose to amend into your pleading that you haven't already pled? You've already pled the fraud claim. Is there anything, any other claim or any other factual basis that you would assert that we don't already see in your pleading? There is a lot, Your Honor, and it's in our amended reply brief on pages 24 through 26 of our amended reply brief. We set forth a sort of a laundry list of what we would plead if we were allowed to replead, and on that issue, Your Honor, I will note that the law in the Fifth Circuit is decidedly against us because we did not propose what we would replead to the district court, and I will just rely on our brief on that. I did, in preparing for oral argument, I filed a supplemental letter brief yesterday on cases I found. I've been told that the panel has struck it. I don't. That's what the courtroom deputy told me, but I did have some arguments based on some new authority I found. Why would that not have been in your original brief? I mean, there's nothing in there that was more recent since the brief was filed, correct? Correct, Your Honor. Back to the settlement agreement. First of all, I want to argue that, well, I'm just going to state my, I have three arguments why it was erroneous. Number one, the district court failed to construe our allegations in the light most favorable to the plaintiff, and it accepted the defendant's allegations in the settlement agreement as conclusive on all the facts relating to the settlement. And in that respect, I want to point the court to the Scanlon v. Texas A&M case where this court, not similar facts at all, but the court said that the district court erred by considering the Texas A&M bonfire commission report that had been cited by the plaintiff and had been quoted by the defendants, and the court accepted those commission findings and declined to accept the plaintiff's well-pled allegations. I have two other points real quick. My second argument is that the Collins-Scanlon exception is not met because our petition referred to the settlement agreement that we learned of from the mediation. It didn't refer to the settlement agreement that was attached to the motion to dismiss because we had never seen it. And then third, the settlement agreement is not central to our claims. It's only evidence of the claims, just like in Scanlon. Okay. Thank you, counsel. You have reserved time for rebuttal. We'll hear from Ms. Gaither now on behalf of partners. I'm sorry, on behalf of Cottonwood Minerals et al. Yes, Your Honor. Good morning, and may it please the court. I'd like to start, as Mr. Katara spent a great deal of time talking about, I'd like to start with this idea of what the district court could and did consider in its decision to dismiss this case. Are you the lawyer who called my friend? That lawyer is right here, Mr. Johnston. Do you know what was said? I know generally what was said, yes. Go ahead. Since you brought it up, I would just like to say, because in the briefing, Mr. Johnston's professional integrity was somewhat called into question with this notion that he had a reason to lie because he represented Longboat then and now. I will say that this email that they are talking about was sent on October 14th, two days after Mr. Johnston's mother died unexpectedly of COVID. So I say that only to say that as lawyers, we all make mistakes. We know sometimes we say things that are in error, and there can be reasons other than just you're trying to defraud someone, and it might be a life reason that you have other things going on in your head just isn't in the game. He represented Cottonwood and Longboat? Yes. He represented both of them in the mediation. So this ---- Why under Rule 12, why is it not sufficient? He's pled that basically, to put it in more street vernacular, there was a switcheroo, that we settled the case, we were all in the same boat, we were all on the same side. Then when it came time to receive settlement money, there was some reason unbeknownst to Plaintiff that the money went this way instead of that way, and so it was as though we had been cheated either by way of contract or he's asserted a fraud claim or various unjust enrichment, whatever have you. Why is that at the Rule 12 stage not enough to clear the hurdle of a cognizable claim? Because, Your Honor, the Rule 12, the jurisprudence in this Court says that you don't have to just accept everything a plaintiff says is true. So, for instance, we have the exception of considering a document that is attached to a motion to dismiss where that document is referenced in the complaint and also central to the claims. Iqbal also tells us that judges are to use their common sense and experience in determining whether or not a claim has been stated. So here, Partners and Friends says to the District Court, there is a settlement agreement, Longboat received X amount of dollars that they buy, separate contract, the development agreement, had an obligation to pay over to us. Longboat and Cottonwood properly placed that agreement before the District Court and say, Your Honor, that's not what this agreement says. And instead of addressing that head-on and telling the District Court how they could replete around that, Partners and Friends simply threw up their hands and said, it doesn't matter what they're saying, it doesn't matter if you know what we're saying to be untrue, The settlement agreement, just a memorialization of what has been pledged, that we entered into this mediation, the claim was settled, and instead of one entity getting the money, the other entity. So the settlement agreement seems like it's consistent with the allegations of the complaint, isn't it? I don't believe so, Your Honor. I mean, it doesn't shed any more light on the situation other than, it doesn't explain why Cottonwood would have gotten the money as opposed to, what is it, Longboat. Yes, sir, Longboat. Longboat. It doesn't make a distinction, and clearly there must have been some type of interest in the claim such that Cottonwood would have received the funds instead of Longboat. I respectfully disagree with Your Honor that the settlement agreement doesn't answer that question because the settlement agreement, which is in the record, as we know, attached to the motion to dismiss, it shows that Cottonwood actually sold completely separate working interests in exchange for a payment. And if you look at the way the settlement is structured, you know, partners and friends seem to have developed this narrative that Mr. Johnston or that Longboat simply erased the word Longboat and put Cottonwood in the settlement agreement or changed the name on a check. If you look at the terms of the settlement agreement, this was a very complicated and involved settlement whereby Cottonwood had to go get permission from another party who had right of first refusal before selling these interests to CCCB and Polaris. There was a deed of trust. There was a promissory note. There was an assignment, all of which were filed in the respective counties. So it wasn't just a matter of let's just change this real quick and make sure that the money is funneled to Cottonwood. It was a very involved settlement in which Cottonwood gave up a right, gave up a property interest in exchange for these funds. But they used the proceeds of the settlement to settle their own claim. I'm sorry. Can you say that again? They used the cash proceeds of the settlement to buy their claim, to settle their claim. Cottonwood did. Cottonwood, yes. Cottonwood had a separate dispute unrelated to Longboat and partners and friends with CCCB and Polaris, and they settled their claim against CCCB and Polaris in exchange for that cash payment. Yes. And the cash. Well, you know, from the standpoint of family and friends here, they've financed this litigation, and I don't remember how much they paid, a couple hundred thousand dollars to finance the litigation. It goes to mediation. And all of a sudden there is cash that comes out of the settlement of the Longboat lawsuit, but all of a sudden that cash is used by the parent company to settle its claim, and so the proceeds don't go to Longboat. Yes, Your Honor, but I think this narrative that there was supposed to be both recovery of the disputed acreage and a monetary recovery is false. If you actually read section 7.01 of the development agreement, it actually contemplates that Longboat is going to either recover the disputed acreage or it can, in its sole discretion, decide to settle entirely for a monetary gain. So the contract itself says Longboat has sole discretion to settle this lawsuit or this disputed acreage dispute. As I read the contract, it wasn't certain at all that there would be any cash in the settlement. But if there was, Longboat would repay the expenses that had been paid by family and friends. That's the way I read the agreement. One hundred percent, Your Honor, I agree. But again, you're correct. There was no certainty that cash would come. But the goal of the development agreement in part was to recover this disputed acreage, which occurred and inured to partners and friends' benefit. So in actuality, Longboat performed exactly as it said it would. It recovered the disputed acreage. At what point did Cottonwood get involved in this litigation? Cottonwood in the disputed acreage litigation? Well, in getting brought in Longboat's suit, that's what the mediation was. Yes, sir. So the mediation was Longboat and Cottonwood had been involved from the beginning in the sense that Longboat had it or, I'm sorry, Cottonwood had its own existing disputes with CCCB and Polaris. And so this was a global mediation trying to settle these working interests that were pooled together, and everyone sort of wanted a business divorce between Longboat, Cottonwood, CCCB, Polaris, and then partners and friends was over here in the corner standing to gain if Longboat recovered the disputed acreage, which it did. So the dispute was always there. And I will say also, and I know this is not in the record and this Court may not be able to consider it, but partners and friends, and they do sort of say this in their amended allegations, their sort of 11th hour allegations that they filed in their amended reply brief. They were at the mediation. They knew what the settlement was going to say. And their only real allegation that the settlement didn't say what they thought it would was Mr. Johnston's email that was sent, where he said, we're going to split this, and then he responded and said, I'm sorry, I was wrong about that. Let me ask you, I asked your opponent about how the fees were paid. Were they paid specific to the litigation, or were they sort of a monthly general fund to underwrite litigation? My understanding is that it was more of a general fund. It was not just paid for this specific dispute. There was a general goal that these parties had to clear all these interests and to fund the work in the development agreement, and Mr. Johnston and my law firm was involved in that. So there was payments made, but it wasn't just specifically for the disputed acreage litigation. And that is my understanding. I was not involved in this at the time, but when you asked that question, I asked Mr. Johnston. And they don't get any of those fees that they've paid, fees and costs, back in light of what happened with the money going to Cottonwood? No, but they do. Sort of like, thanks for playing, but, you know, we're going to take the money and put it in this other entity. You know, that's what the pleading seems like it's saying. Certainly, but you have to remember that Longboat did recover the disputed acreage. So there are wells being drilled on that acreage right now, which inures to their benefit. So they actually did recover what they thought they would. They recovered the right to drill on the disputed acreage. And the $850,000 was not something that was necessarily contemplated by the development agreement. Well, they thought enough about it to put it in the contract. Certainly. But if you read the contract, it's sort of a protection for partners and friends, actually, because if Longboat had decided, because, again, under the contract, Longboat had sole discretion to settle the disputed acreage litigation any way it wanted to. So if Longboat decided to just settle for money, to give up the disputed acreage and just settle for money, partners and friends would be protected because they would get part of that money, as opposed to just saying we're going to sell the disputed acreage and you're not going to get anything. It was a protection for them. The fact that they settled the disputed acreage question did not cut off the possibility that they would also get cash. You're correct, Your Honor. It does not. But, again, I think in this instance they didn't get cash. I mean, it's easy enough to write in a pleading they got this money. But when the district court is confronted with the actual contract that says, no, a different entity sold an asset and got money, Longboat did what it said it was going to do and recovered the disputed acreage, but no money, the district court was within its discretion to say I don't have to believe something that I know not to be true, and the fact that you won't even engage this with me, you won't tell me how you would change your pleadings or why they're wrong, it was entirely within the district court's discretion to say you can't amend your pleadings. You won't talk about it. You won't tell me what you're going to do. So I can assume that any amendment you would make would be futile. And, in fact, if you look at the amendments that they made a couple of weeks ago in their amended reply brief, they are, in fact, futile. They don't actually fix the problems that the district court identified. And before I go into that, I would like to back up for a moment and say with regard to those 11th hour amendments, this court addressed an identical situation back in 2015 in the Electro Stem Medical Services case. And in that case, the court said that by choosing to wait until the 11th hour to finally explain how it could cure the defect that the district court identified, appellant has waived its challenge to the district court's denial of leave to amend on the basis of futility. So this court has actually directly addressed the issue that they're bringing here today, which is they never told the district court what they would do. Let me go back to the issue of the underlying litigation. What was Cottonwood's claim that went to mediation? Cottonwood— It had to be a claim separate and distinct from the Longboat claim, right? Yes, sir. So if I recall correctly, and I do believe this is actually in the record, Cottonwood had a separate joint operating agreement with CCCB and Polaris. And so they had—there was a dispute between Cottonwood and CCCB-Polaris. And again, Longboat and partners and friends were not a party to that operating agreement. It was CCCB-Polaris and Cottonwood. And so there was a dispute that arose under that operating agreement about drilling rights and who owned what. So it was that dispute under that separate contract to which Longboat and partners and friends were not a— That had been pled in the case that went to mediation? That had been specifically pled, or is this something that came up—oh, by the way, we have this other dispute, and since we're all here— No, it was specifically pled. It was a global mediation to settle the dispute among all of these parties. The joint operating agreement was CCCB-Polaris and Cottonwood, and the disputed acreage was Longboat and CCCB-Polaris. There was no overlap? It seems like it would be two different lawsuits. Well, if I recall correctly, I don't believe that there was actually a lawsuit filed. I think this was a pre-suit mediation to try and globally settle everything before a lawsuit was filed. So if you're correct, it may very well have—should have been a separate lawsuit had there actually been a lawsuit filed. But because this was—these were parties that had disputes and the goal was to sort of effectuate a complete business divorce, it made sense for everyone to go to the same mediation. And it's all part of the same settlement agreement, if I recall correctly. Yes, sir. It is all— Well, we're going to settle the claims involving Longboat here, and we also mediated these claims, and so we're going to do a separate settlement involving the money. Yes, sir. It's all part of the same settlement. So going back briefly to the amendments that they've made, where they, for the first time, tell this Court how they would have amended their pleadings if given the opportunity, they don't actually fix the problems that the district court identified. Specifically, the district court said, you've pled with particularity these conversations that you had with Mr. Johnston, but all of that is after the development agreement was signed, after the settlement agreement was agreed to, and none of those allegations are actually evidence of fraud and the inducement with regard to the development agreement. So what they've done in their amended allegations is they've, again, reiterated their conversations with Mr. Johnston, and then they've given the Court sort of some conclusions that they hope the Court will come to. For instance, because Longboat and Cottonwood are commonly owned, they might have conspired to switch the settlement agreement. Because Mr. Johnston represented them both in that mediation and here, he had a reason to lie. And because the settlement agreement contains documents that were signed after that initial email from Mr. Johnston, it must be that there was fraud. But those statements are not stated with the kind of particularity that Rule 9b requires, and they're not evidence that Longboat made any misrepresentation at the time that the development agreement was entered into. It's simply supposition and suspicion. And as the District Court held, that does not plead a claim for fraud. And even now, a year later, as they've tried to tell you why their lawsuit would stand, they've failed. They cannot allege any claims that Longboat, or they have not alleged with particularity anything that would suggest that Longboat made a misrepresentation and that it never intended to fulfill its duties and obligations under the development agreement. Because, in fact, it did. It did fulfill its duties. It recovered the disputed acreage, which inures to the benefit of partners and friends. So if the panel has no more questions, I will take my seat. Thank you. All right, rebuttal. Your Honors, we— You at the mediation? Pardon? You at the mediation? No, Your Honor. My law firm and I, we were not involved at all. Do you disagree with counsel that you had a representative at the mediation? I do not have personal knowledge of whether anyone was present. I think that—my understanding is that our representative was being informed of it. I don't know if he was there. Who was the representative? I don't even know who it was. It was either Claudio Coltolini or another gentleman whose name I can't remember. And Mr. Coltolini, he's the member or leader of— He's the CEO. CEO, sorry. And he was there. I do not know if he was there. I do not know who the representative was. But somebody from partners and friends was at the mediation. I don't know if he was at the mediation or just maybe—I don't even know if it was in person or Zoom at the time. This was in 2020, and everything I did back then was Zoom. I don't know—I do not know if he was present or not. And so do you have a position on whether the terms of the settlement discussed at the mediation were changed between the adjournment of the mediation and the settlement agreement? It's our allegation and our pleading that we were informed that Longboat was going to recover $850,000. And then— And that was the terms at the mediation. That's what our pleading says. Counsel, I understand it, but we're not a jury, right? So you can be candid with our—when we ask you a direct question about what happened, you can say, you know, listen, this is what the pleading says, and here's what I can tell you in response to your question, because we can understand both the standard of review and what the pleading says, and we can also hear your answers to our specific questions. Yes, Your Honor. I do not know the answer. Okay. But for your claim to work, you would have to know the answer, wouldn't you? Because you'd have to say, look, we were promised 850—or whatever, the 70 percent, and we didn't get it. Well, I know that my client, which, of course, advised us of the nature of the claim and what to put in our pleading, told us that he was told Longboat's going to get $850,000. At the settlement. I mean, I'm sorry, at the mediation agreement. As a result of the mediation. I don't know if it was during the mediation or after. I do not know. Separate and apart from the email. Separate and apart from the email that you received from the lawyer. Yes. Okay. Yes. So our— Let me ask you, does your district have a rule that when you file a motion to amend, you have to attach a copy of the proposed amendment? I believe it does, Your Honor. Now, see, if you had done that and got past the 12B-6, I mean, there's a wealth of possible information out there from a variety of sources that you don't have, and we're sitting here without it, you know? Your Honor, you're correct. I mean, that's the problem with your lawsuit. You're correct. I'd like to turn back to the fact that we don't know the details of the underlying litigation. It's not in the record, and I personally do not know. I wish I did, and I'd be happy to tell the court what I did know. We also don't know how the final settlement agreement came about. We haven't had discovery, and that's one of the problems with the 12B-6 dismissal. I'll repeat again, and Ms. Gaither talked about how this settlement agreement is just conclusive, case over, case closed. That's the district court's error is it considered the settlement agreement, and it should not have under Scanlon, and it credited the settlement agreement as conclusive, and it failed to view the facts in our petition as true and in the light favorable to the plaintiff, to partners. The mistake there is the one that was made at the court found in Scanlon, and the court can decide this case on that point alone because, as we briefed, the settlement agreement is not the one we talked about in our petition. It's not central to our claims. It's evidence, and it's just not conclusive. Okay, counsel. Thank you. Thank you both for your briefing and for your argument here today. The court will consider the case submitted.